UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREG NEELY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-CV-0018-CVE-FHM |
| ) | |
| CITY OF BROKEN ARROW, OKLAHOMA, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 10). Plaintiff Greg Neely ("Neely") filed the amended complaint (Dkt. # 9) on February 18, 2007.[1] Plaintiff alleges that he was retaliated against in violation of the Participation and Opposition Clauses of Section 704(a) of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Specifically, plaintiff claims that he "was denied a promotion to the position of Fire Chief and subsequently demoted in retaliation for participating in the investigation of and for opposing what he reasonably believed in good faith to be unlawfully discriminatory practices of his employer." Dkt. # 9, ¶ 2. Defendant now moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**I.**

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the

---

[1] Plaintiff filed the amended complaint after defendant filed a motion to dismiss the original complaint (Dkt. # 7). The motion to dismiss the original complaint is therefore moot.

nonmoving party. Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). The Tenth Circuit has referred to dismissal under Rule 12(b)(6) as a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006) (citing Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001)). A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

## II.

Given that the Court construes the factual allegations as true at this stage in the proceedings, the Court briefly sets forth the facts as presented by plaintiff in the amended complaint.[2] Defendant hired plaintiff in June 2002 as Deputy Fire Chief. According to plaintiff:

> In May 2003, three Broken Arrow firefighters allegedly engaged in a pattern of sexually harassing conduct while on duty attending a training program in Stillwater, Oklahoma, and while driving a Broken Arrow Fire Department van clearly marked as such. One of their victims turned out to be the stepdaughter of a state fire-training manager.

Dkt. # 9, ¶ 11. The state fire-training manager then reported the incident to plaintiff, and plaintiff began an investigation of the incident. "Administrative officials of the City encouraged plaintiff to carry out the investigation and informed plaintiff of their belief that a failure to do so might expose the City to liability under Title VII of the Civil Rights Act." Id., ¶ 12. "Plaintiff reasonably believed in good faith that the conduct of the firefighters while they were on duty and driving a Broken

---

[2]  Plaintiff elaborates upon the facts in his response to the motion to dismiss. See Dkt. # 17, at 2-4. The Court bases this opinion and order on the facts presented in the amended complaint, not the additional facts set forth in plaintiff's response.

2

Arrow Fire Department van constituted unlawful sex discrimination and/or created a sexually offensive and hostile workplace under Title VII of the Civil Rights Act." Id.

Plaintiff eventually found that the three firefighters had violated the city's sexual harassment policy, and the firefighters were disciplined. After this investigation, plaintiff's relationship with the International Association of Fire Fighters Local 2552 changed. When the fire chief retired, plaintiff was appointed the Acting Fire Chief. However, another individual, who plaintiff contends was less qualified than himself, was ultimately chosen to be the new Fire Chief. Plaintiff's salary was reduced to the level it was at prior to his appointment as Acting Fire Chief. Id., ¶ 21. Thereafter, plaintiff was demoted "from second in the chain of command to one of four Deputy Chiefs who are third in the chain of command." Id., ¶ 22.

### III.

It is well-established that a plaintiff can successfully maintain a retaliation claim even if the conduct which the plaintiff opposed (i.e. the underlying conduct) does not actually violate Title VII. See Crumpacker v. Kansas Dept. of Human Resources, 338 F.3d 1163, 1172 n.5 (10th Cir. 2003) ("This court [] has held that an *actual violation* is not required to maintain a retaliation claim under Title VII") (emphasis in original). A plaintiff need only show that he had a reasonable and good faith belief that he opposed or participated in the investigation of conduct made unlawful under Title VII. In other words, there is a subjective (i.e. good faith) and an objective (i.e. reasonable)

3

component to establishing a retaliation claim.³ Here, the dispute centers on the objective component of plaintiff's retaliation claim. Specifically, defendant contends that, as a matter of law, plaintiff could not have reasonably believed that the firefighter's conduct was unlawful under Title VII. Thus, it claims that plaintiff has failed to state a claim upon which relief may be granted.

As a preliminary matter, plaintiff argues that the objective component to a retaliation claim applies only to the Opposition Clause and not the Participation Clause.⁴ In Jeffries, which was decided prior to Breeden, the Tenth Circuit cited with approval the First Circuit's interpretation of the Participation Clause of Title VII as not "requiring that the charges be valid, nor even . . . implied[ly] requir[ing] that they be reasonable." Jeffries, 147 F.3d at 1231 (quotation omitted). As noted, the Supreme Court held in Breeden that the plaintiff could not bring a retaliation claim for her alleged opposition to unlawful conduct because it was unreasonable for her to believe that the underlying conduct was unlawful under Title VII. Because Breeden involved the Opposition Clause

---

³ Prior to 2001, the Tenth Circuit required only a subjective, good faith belief that the conduct at issue was unlawful. See, e.g., Love v. Re/Max of America, Inc., 738 F.2d 383 (10th Cir. 1984); Jeffries v. Kansas, 147 F.3d 1220 (10th Cir. 1998). However, in Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001), the Supreme Court reversed the Ninth Circuit's holding that a plaintiff could bring a retaliation claim based on a single incident of workplace harassment so long as the plaintiff had a good faith belief that he had opposed unlawful conduct. Regardless of plaintiff's good faith belief, the Supreme Court held that plaintiff could not bring a claim of discrimination because "[n]o reasonable person could have believed that the single incident . . . violated Title VII's standard." Breeden, 532 U.S. at 271.

⁴ Section 2000e-3 of Title VII states that it shall be unlawful to discriminate against an employee:

> . . . because he has opposed any practice made an unlawful employment practice by this subchapter [the "Opposition Clause"], or because he has . . . participated in any manner in an investigation, proceeding, or hearing under this subchapter [the "Participation Clause"].

4

and not the Participation Clause, plaintiff argues that <u>Breeden</u> should be read narrowly to require the objective component only in Opposition Clause retaliation cases. Plaintiff contends that <u>Jeffries</u> is still good law with respect to Participation Clause retaliation cases. The Court disagrees. In <u>Crumpacker</u>, the Tenth Circuit described the case law in this circuit prior to <u>Breeden</u>. It cited to both <u>Love</u>, an Opposition Clause case, and <u>Jeffries</u> in explaining that, prior to 2001, a plaintiff did not have to show that his good faith belief was also reasonable. Directly after describing <u>Jeffries</u>, the Tenth Circuit stated: "The Supreme Court, however, recently rejected by implication any interpretation of Title VII that would permit plaintiffs to maintain retaliation claims based on an unreasonable good-faith belief that the underlying conduct violated Title VII." <u>Crumpacker</u>, 338 F.3d at 1171. It continued, "the Supreme Court's decision in [<u>Breeden</u>] supercedes and overrules this court's prior decisions, to the extent they interpreted Title VII as permitting retaliation claims based on an unreasonable good-faith belief that the underlying conduct violation Title VII." <u>Id.</u> Notably, the Tenth Circuit did not state that "retaliation opposition claims" must be based on reasonable, good-faith belief; it stated that "retaliation claims" in general are governed by <u>Breeden</u>. This Court reads <u>Crumpacker</u> to hold that <u>Breeden</u> added an objective, reasonableness inquiry to both opposition and participation retaliation cases.

The retaliation provision of Title VII makes it an unlawful employment practice for an employer "to discriminate against any of its employees . . . because he has opposed any practice <u>made an unlawful employment practice by this subchapter</u>, or because he has . . . participated in any manner in an investigation, proceeding, or hearing <u>under this subchapter</u>." 42 U.S.C. § 2000e-3(a) (emphasis added). Under the plain language of the statute, the underlying conduct which the

5

plaintiff opposes or investigates must be unlawful under Title VII.[5]  For example, if an employer retaliates against an employee after the employee filed a harassment complaint unrelated to workplace discrimination, then the plaintiff cannot bring a Title VII retaliation claim.  See, e.g., Anderson v. Academy Sch. Dist. 20, 2004 WL 2757938 (10th Cir. Dec. 3, 2004) ("even if [the plaintiff's] supervisor did retaliate against her for filing a complaint, the complaint was not protected activity under Title VII; consequently, the supervisor's retaliation was not unlawful under Title VII.").

Harassment of members of the public, however vulgar and inappropriate, is not covered by Title VII.  Title VII makes it unlawful for an employer to engage in discriminatory employment practices.  It does not prohibit every claim of discrimination against an employer – even claims based on sex, race, or another protected category – when the discrimination claim does not relate to an employment practice.  It follows that a retaliation claim based on opposition to or investigation of a co-worker's harassment of the public does not state a claim of action under Title VII.

A Fourth Circuit case, Crowley v. Prince George's County, Maryland, 890 F.2d 683 (4th Cir. 1989), is instructive on this point.  There, the plaintiff alleged that his position was downgraded in retaliation for investigating claims that members of the police department has harassed members of the community on the basis of their race.  The Fourth Circuit noted that the downgrading of plaintiff's position may have been "wrongful or even spiteful."  Id. at 687.  However,

---

[5]  That is not to say that the underlying conduct must have actually violated Title VII. As emphasized above, one can bring a successful retaliation claim even if the underlying conduct does not, in fact, rise to a Title VII violation. The critical inquiry is whether plaintiff has a reasonable, good faith belief that he opposes conduct that is unlawful under Title VII. However, whether it is reasonable for a plaintiff to believe that the conduct is unlawful under Title VII depends on whether, as a general matter, the underlying conduct is unlawful under Title VII.

6

> [to] recognize [plaintiff's] claim would be to authorize retaliation actions under Title VII for anyone whose job entails the investigation of any claim of discrimination against his or her employer without regard to whether the claimed discrimination relates to a practice of employment. While Congress may decide to extend the statute's coverage to persons who bring any discriminatory practice of an employer to light, such a step lies beyond the provide of the courts. To find in Title VII protection for whistle-blowers on each and every instance of discrimination on the part of an employer is more than we think the plain language of its provisions will support.

Id.

Likewise, in Wimmer v. Suffolk County Police Dept., 176 F.3d 125 (2d Cir. 1999), the Second Circuit upheld the district court's decision to grant judgment as a matter of law on the plaintiff's Title VII retaliation claim. The plaintiff presented evidence at trial that certain members of the police department had acted in a discriminatory manner toward the public. "He offered no evidence, however, that there was unlawful discrimination with respect to the terms and conditions of employment within the Department." Id. at 135. As such, the Second Circuit found that the plaintiff "could not have reasonably believed that he was opposing an employment practice because the evidence does not address racial discrimination in an employment practice." Id. at 136. Also, the court found that his actions did not oppose the unlawful employment practice of a racially hostile work environment because "[i]t is inherent in the definition of a racially hostile work environment, . . . that the person against whom the hostility is directed must be in an employment relationship with the employer." Id.

Here, in the amended complaint, plaintiff bases his retaliation claim on his belief that the "conduct of the firefighters while they were on duty and driving a Broken Arrow Fire Department van constituted unlawful sex discrimination and/or created a sexually offensive hostile workplace under Title VII of the Civil Rights Act." Dkt. # 9, ¶ 12. From the face of the amended complaint,

it appears that the three firefighter's conduct was directed to members of the public as they drove the fire department van to the training session in Stillwater, Oklahoma. The amended complaint does not state that any employees, other than the three perpetrators of this alleged conduct, were present at the time of the sexually offensive conduct. To the extent that the conduct of the firefighters affected only members of the public (i.e. non-employees of the defendant), plaintiff cannot state a claim of retaliation under Title VII because, as a matter of law, it is not reasonable for plaintiff to believe that such conduct violated Title VII. As in Crowley, any retaliatory action defendant took based on the opposition of the three firefighters' conduct toward the public or plaintiff's investigation of that conduct is "wrongful or even spiteful"; but it is not within the purview of Title VII.

With respect to plaintiff's claim that he believed that the firefighters conduct created a hostile work environment, it is only reasonable to believe that the underlying conduct was unlawful under Title VII if "the person against whom the hostility is directed [is] in an employment relationship with the employer." Wimmer, 176 F.3d at 136. As it stands, plaintiff's amended complaint does not state that the hostile work environment involved persons in an employment relationship with the City of Broken Arrow.

In his response to the motion to dismiss, plaintiff contends that there are "two different scenarios under which the conduct of the three offending firefighters might reasonably have been a violation of Title VII." Dkt. # 17, at 10. Under the "first scenario," plaintiff argues that the underlying conduct could reasonably be viewed to have created a hostile work environment for other employees attending the fire training in Stillwater, even though those individuals were not employees of defendant. Plaintiff relies on two non-binding precedents, which hold that an

8

employer may have Title VII liability to the employees of another entity when the employer has some control over the circumstances or conditions of the employment of the non-employees. See Doe v. St. Joseph's Hospital, 788 F.2d 411, 422-23 (7th Cir. 1986); Sibley Memorial Hospital v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973). However, nowhere in the amended complaint is there any statement that the Broken Arrow Fire Department had any control over those non-employees present at the training session in Stillwater, Oklahoma.

Under the "second scenario," plaintiff argues that the underlying conduct could reasonably be viewed to have created a hostile work environment when the three firefighters recounted their off-site exploits to others at the Department. See Dkt. # 17, at 12. Earlier in the response, plaintiff states that "upon [the three firefighter's] return to work in Broken Arrow, there is evidence that they recounted their exploits to fellow firefighters possibly in the presence of female Broken Arrow Fire Department employees." Dkt. # 17, at 2-3. However, nowhere in the amended complaint does plaintiff assert that the firefighters made comments to co-workers, thereby creating an allegedly hostile work environment.

Reading the amended complaint, it appears that plaintiff's retaliation claim stems from the three firefighters' alleged harassment of members of the public. As noted above, such a complaint fails to state a claim upon which relief may be granted. However, based on plaintiff's response, it appears that there are some facts – albeit facts not set forth in the amended complaint – that could sufficiently state a claim upon which relief may be granted. Therefore, in the interest of justice, the Court finds that the best course of action is to permit plaintiff to amend his complaint to include

9

facts – if such exist – that would give rise to a reasonable belief that the underlying conduct was unlawful pursuant to Title VII.[6]

In permitting the plaintiff to file a second amended complaint, the Court is mindful of the liberal notice pleading rules.  Plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Plaintiff need not set forth detailed facts concerning the underlying conduct.  However, he must include some factual allegation that defendant discriminated against him "because he has opposed any practice <u>made an unlawful employment practice by this subchapter</u>, or because he has . . . participated in any manner in an investigation, proceeding, or hearing <u>under this subchapter</u>."  42 U.S.C. § 2000e-3(a) (emphasis added).  Mere statements that other persons told plaintiff that the underlying conduct could subject the Fire Department to Title VII liability is not sufficient.  To the extent plaintiff includes factual allegations that the underlying conduct relates to an employment practice, he will have stated a claim upon which relief may be granted.[7]  To the extent that his second amended complaint is based on alleged sexual harassment of the public, then the Court will dismiss the complaint.

---

[6] In his response, plaintiff states: "In evaluating defendant's motion to dismiss, however, if the Court should determine that more of the detailed facts noted above must be included in the Amended Complaint, then plaintiff respectfully requests that he be granted leave to file a Second Amended Complaint to incorporate more factual detail."  Dkt. # 17, at 5 n.2.

Fed. R. Civ. P.15(a) states that, after a party has amended its pleading once, "a party may amend the party's pleading only be leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

[7] Of course, whether plaintiff would succeed on the merits is a wholly separate inquiry.  At the summary judgment stage, the Court will determine whether there is a genuine issue of material fact as to plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 10) is hereby **denied**. The motion to dismiss the original complaint (Dkt. # 7) is **moot**. Plaintiff shall have ten days from the date this order is entered to file a second amended complaint consistent herewith.

**DATED** this 29th day of May, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT