UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREG NEELY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-CV-0018-CVE-FHM |
| ) | |
| CITY OF BROKEN ARROW, ) | |
| OKLAHOMA, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Renewed Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support (Dkt. # 49). In a previous Opinion and Order (Dkt. # 40), the Court directed the parties to conduct limited discovery for the purpose of determining whether plaintiff Greg Neely ("Neely") actually submitted to the EEOC investigator in written or oral form the details enumerated in his July 16, 2007 affidavit. Neely v. City of Broken Arrow, Okla., No. 07-CV-0018-CVE-FHM, 2007 WL 4209073, at *4 (N.D. Okla. Nov. 26, 2007). The Court found that plaintiff's July 16, 2007 affidavit, submitted in response to a dismissal motion, raised a factual issue as to the Court's subject matter jurisdiction. Id. The parties conducted limited discovery. On February 28, 2008, defendant City of Broken Arrow, Oklahoma ("City") renewed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). See Dkt. # 49, at 1. Defendant argues that plaintiff's proffered evidence "woefully" fails to meet plaintiff's burden. Dkt. # 59, at 5. Thus, the issue before the Court is whether plaintiff's evidence is sufficient to establish the Court's subject matter jurisdiction. For the reasons set forth below, the Court finds that defendant's motion to dismiss should be **granted**.

**I.**

In May 2003, several on-duty firefighters of the Broken Arrow Fire Department sexually harassed female members of the public while attending a training program in Stillwater, Oklahoma. Dkt. # 2, at 3. Neely, who was then the deputy fire chief, soon learned of the incident and began an investigation. Following the investigation, Neely recommended discipline of the three firefighters. This decision lead to an arbitration proceeding, in which the findings of Neely's investigation were upheld.[1] Id. at 2. Neely alleges that the City fire department denied him a promotion on December 17, 2004, and demoted him shortly thereafter, in retaliation for his participation in the investigation and for his opposition to the firefighters' conduct. Dkt. # 24, at 1.

On October 11, 2005, the Equal Employment Opportunity Commission ("EEOC") received a general intake questionnaire from Neely. Dkt. # 59, Exhibit 2, at 1. In the questionnaire, Neely stated that the City retaliated against him "for investigating a [d]iscipline issue where members were sexually harassing a woman while on a training mission in Stillwater[,] OK. These members were subsequently [d]isciplined & found guilty of these & other offenses in an arbitration hearing." Id. at 3. Neely added that "had I not pursued the investigation that led to the discipline[,] [] I would be Fire Chief & would not be marginalized & or in effect demoted." Id. at 5. Neely also attached an affidavit, which was prepared with the assistance of an out-of-state attorney group, Legal Momentum. Dkt. # 59, Exhibit 3. The affidavit focused the EEOC's attention on the "central issue in this case[:] [] whether Greg Neely can bring a legal action against the City of Broken Arrow for

---

[1] The issue before the arbitrator was whether the City had authority to punish the firefighters for their inappropriate behavior while attending the training session and for their uncooperative behavior during the investigation. Dkt. # 59, Exhibit 1, at 2.

passing him over as fire chief, in affect [sic] demoting him, and ostracizing him in retaliation for his involvement ensuring the discipline of firefighters who sexually harassed the public." Id.

On November 28, 2005, the EEOC received Neely's formal charge of discrimination. See Dkt. # 59, Exhibit 4. In the charge, Neely checked the "retaliation" box and stated that January 1, 2005 was the earliest and latest date on which the discrimination took place.[2] Id. at 1. In describing the particulars of his retaliation claim, Neely mentioned only his investigation of the three firefighters on "sexual harassment charges" and the resulting arbitration proceeding. Id. Two months later, Neely filed an amended charge. See Dkt. # 59, Exhibit 5, at 1. He again described only his investigation of the three firefighters: "On or about May 2003, I investigated and a disciplinary board suspended three Broken Arrow firefighters on sexual harassment charges." Id. Neely added that the three firefighters' suspensions were "upheld in arbitration between management and the union." Id.

On August 4, 2006, Neely received a determination letter from the EEOC. In the letter, the EEOC stated that its investigation had established a violation of Title VII. Dkt. # 59-9, at 1. The investigation "revealed sufficient evidence to establish that [plaintiff] did reasonably and in good faith engage in a protected activity when he disciplined three of his subordinates for sexually harassing a member of the public." Id. at 1 (emphasis added). The EEOC invited the parties "to join it in collective efforts toward a just resolution of this matter." Id. at 1-2.

---

[2] Neely may have chosen January 1, 2005 as the date on which the alleged discrimination took place because he claims that defendant removed him from the chain of command and relieved him of his take-home vehicle in January 2005. Dkt. # 59, Exhibit 2, at 3; see Dkt. # 59, Exhibit 3, at 5.

3

The parties did not resolve the matter, however, and Neely filed the instant action on January 17, 2007. Dkt. # 2. In the original complaint, Neely claimed that he was denied a promotion and subsequently demoted "in retaliation for participating in the investigation of and for opposing what he reasonably believed in good faith to be unlawfully discriminatory practices of his employer." Id. at 1. Neely recited only the May 2003 incident, the investigation of the three firefighters, and the resulting arbitration. See id. at 3-4. The City moved to dismiss the complaint for failure to state a claim. Dkt. # 7. The City argued that Title VII does not cover retaliation claims based on opposition to or investigation of harassment of the public. Id. at 5, 11. The City further argued that Neely could not have reasonably believed a Title VII violation occurred. Id. at 3. In response, Neely amended his complaint. See Dkt. # 9. Neely alleged that he did, in fact, reasonably and in good faith believe that the firefighters' conduct "while they were on duty and driving a Broken Arrow Fire Department van constituted unlawful sex discrimination and/or created a sexually offensive and hostile workplace" under Title VII. Id. at 4. The City moved to dismiss the amended complaint. See Dkt. # 10.

The City's motion was denied. Neely v. City of Broken Arrow, Okla., No. 07-CV-0018-CVE-FHM, 2007 WL 1574762, at *5 (N.D. Okla. May 29, 2007). The Court found that Title VII does not cover harassment of members of the public. Id. at *3. "Title VII makes it unlawful for an employer to engage in discriminatory employment practices. . . . It follows that a retaliation claim based on opposition to or investigation of a co-worker's harassment of the public does not state a claim of action under Title VII." Id. (emphasis in original). Further, to the extent the amended complaint alleged conduct affecting members of the public only, Neely could not state a claim of retaliation – for "as a matter of law, it is not reasonable for plaintiff to believe that such conduct

6

violated Title VII." Id. at *4.  Notwithstanding this determination, Neely was granted ten days in which to file a second amended complaint because his response intimated the existence of facts that could reasonably state a claim. Id. at *5.  The Court noted, however, that "[t]o the extent plaintiff includes factual allegations that the underlying conduct relates to an <u>employment</u> <u>practice</u>, he will have stated a claim upon which relief may be granted.  To the extent that his second amended complaint is based on alleged sexual harassment of the public, then the Court will dismiss the complaint." Id. (emphasis added).

In the second amended complaint (Dkt. # 24), Neely asserts several new allegations.  He elaborates on "the pattern of sexually harassing conduct" allegedly exhibited by the three firefighters. Id. at 3.  He states that "upon information and belief, one or more of these firefighters brought this sexually harassing conduct into the Broken Arrow Fire Department workplace by retelling these sexually charged exploits to co-workers upon their return from the Stillwater training event." Id. at 3-4.  According to Neely, department "employees were offended both by the conduct of the three firefighters and by having stories of these events brought into" the workplace. Id. at 4.  Neely further avers that during his investigation of the three firefighters, he

> became aware of conduct by one or more of the offending firefighters that included repeated episodes of sexually offensive speech in the workplace, bringing women to the fire station for sexual activities, using Fire Department computers for openly participating in sexually-oriented chat rooms and viewing pornography, and then commenting to co-workers upon the pornographic material they had seen, and accosting a female Broken Arrow City employee on the job with the demand to 'show us your tits.'  It was reported to [] plaintiff that this conduct was highly offensive to employees of the Broken Arrow Fire Department.

Id.  Neely concludes that he reasonably believed in good faith that the firefighters' conduct constituted unlawful sex discrimination, and that "such conduct created, contributed to, and/or

created the serious potential for a sexually offensive and hostile workplace for both male and female employees." Id. at 5.

In June 2007, the City moved to dismiss Neely's second amended complaint for lack of subject matter jurisdiction. See Dkt. # 25. The City argued that Neely failed to exhaust administrative remedies as to the new factual allegations in the second amended complaint. In response, Neely argued that he provided this information to the EEOC investigator and that he reported this information to his employer. Dkt. # 29, at 9. Neely proffered his personal affidavit, dated July 16, 2007, in support of his contention. See Dkt. # 29-2, Affidavit of Greg Neely. Neely attested that "to the best of my recollection I provided this information in some form to the EEOC investigator either in writing or verbally." Id. at 4.

The Court denied the motion, finding that Neely's affidavit created a factual issue as to whether he informed the EEOC about the co-worker sexual harassment. Dkt. # 40, at 8. The Court held that "[i]f plaintiff did, in fact, relay these facts to the EEOC investigator, an inference might be drawn that plaintiff meant for his EEOC charge, broadly referencing the 'sexual harassment charges,' to incorporate these factual allegations." Id. Thus, the parties were permitted to conduct limited discovery for the purpose of determining whether Neely actually submitted to the EEOC investigator in written or oral form the details set forth in his July 16, 2007 affidavit. Id. The Court advised the City that, if Neely could not substantiate such a submission, the City could renew its Rule 12(b)(1) motion to dismiss. Id. at 8-9.

Limited discovery was conducted, and the City has renewed its Rule 12(b)(1) motion. The City argues that Neely has not produced sufficient evidence to substantiate his alleged submission of the details in his July 16, 2007 affidavit to the EEOC investigator. See Dkt. # 49, Dkt. # 59.

8

Neely's evidence consists of three relevant documents.[3] Neely proffers a declaration of the EEOC investigator. See Dkt. 50-3, Declaration of Kathy Nusz. The EEOC investigator states that she "investigated the charge but cannot recall specific factual information due to the passage of time since the charge was filed." Id. at 1. The investigator remembers that Neely telephoned on several occasions to inquire whether she had received information sent to her office. Id. The investigator "cannot recall specific factual information from those telephone conversations[,]" however. Id. The investigator states that she may or may not have documented the details of these telephone calls. Id. She avers that she does not normally document every telephone call with a charging party, but that if she does take notes, she generally places the notes in the charging file. Id. The EEOC investigator reviewed Neely's charging file and did not locate any notes evidencing her phone conversations with Neely. Id.

Neely also proffers his "supplemental" affidavit and an affidavit of his wife. In his affidavit, Neely asserts that when he "first contacted the EEOC about a charge of retaliation, the initial focus of the contact was [his] investigation of three Broken Arrow firefighters for their conduct during a

---

[3]   Neely concedes that the "only written reference" within the EEOC file to any matter alleged in his July 16, 2007 affidavit is a reference buried in the arbitration determination. Dkt. # 50, at 2. The arbitrator states that, after the Stillwater training event, "rumors were rampant" in Broken Arrow. Dkt. # 59, Exhibit 1, at 3. The arbitrator further states that "[s]ome rumors, like the three [firefighters] had been caught in a prostitution sting, were simply unfounded. No one had the correct story, but it did not matter because stories went around fire houses, city government and the community." Id. The City claims that the EEOC file did not contain the arbitration determination. Dkt. # 59, at 5. The affidavit accompanying Neely's general intake questionnaire references the arbitration determination as an attachment, however. See Dkt. # 59, Exhibit 3, at 2. The Court finds this "written reference" and its concomitant factual dispute are irrelevant. The written reference merely states that rumors were rampant "[b]ack in Broken Arrow." Dkt. # 59, Exhibit 1, at 3. It does not state the source of these rumors or give specifics about any ongoing sexually harassing conduct by the three firefighters.

9

training event in Stillwater, Oklahoma."[4] Dkt. # 50-4, Supplemental Affidavit of Greg Neely, at 3. Neely claims that he perceived "the Stillwater episode as one of the more glaring examples of an overall culture of sexual offensiveness and gender hostility toward women . . . ." Id. at 4. Neely recounts one particular telephone conversation he had with the EEOC investigator after the filing of the amended charge. Id. He alleges that he told "the EEOC investigator about matters [] set forth in . . . [his] previous affidavit." Id. He recalls "discussing additional information [he] [] discovered during the investigation of the three firefighters" and "making the comment to the EEOC investigator that [his] investigation [] uncovered 'a culture that fostered the degradation of women' within the [Broken Arrow Fire Department]." Id. Neeley claims that the EEOC investigator did not inquire about his comment, "but instead asked a lot of questions about [his] qualifications . . ., the quality of [his] prior work record, and the promises that had been made . . . about becoming the next Fire Chief." Id. Neely further claims that he volunteered to submit additional proof regarding the existence of "this culture," but that the EEOC investigator did not request submission of this information or express any interest in the subject. Id. at 4-5. Neely concludes, "[h]ad the EEOC investigator expressed any interest in this topic, I would have submitted at least the arbitration testimony of the Union President, as well as any other information I possessed concerning this sexually hostile culture within the [Broken Arrow Fire Department]."[5] Id. at 5.

---

[4] Neely also asserts several new factual allegations that are of no import to the issue before the Court. See Dkt. # 50-4, Supplemental Affidavit of Greg Neely, at 2-3, 5.

[5] The arbitration hearing transcript, see Dkt. # 50-6, Exhibit 5, which, according to Neely's concession, was not in the EEOC file, see supra note 3, is irrelevant. This document has no bearing on whether Neely informed the EEOC investigator about the co-worker sexual harassment.

In the affidavit of Neely's wife, she recounts one particular telephone conversation she overheard between Neely and the EEOC investigator. See Dkt. # 50-5, Affidavit of Leah Neely. She claims Neely discussed with the EEOC investigator two of the allegations set forth in his July 16, 2007 affidavit, "including a rumor that the three firefighters had been involved in a 'prostitution sting,' were [sic] causing substantial disruption at the Broken Arrow Fire Department." See id. at 2; see also Dkt. # 29-2, at 4. She also claims that Neely "comment[ed] to the EEOC investigator during this telephone conversation that his investigation of the three firefighters had uncovered at the Broken Arrow Fire Department a culture that was degrading to women." Dkt. # 50-5, at 2.

The following table summarizes whether certain key documents contain allegations of co-worker sexual harassment:

| **Document** | **Date** | **Description of Co-Worker Sexual Harassment?** |
|---|---|---|
| Intake Questionnaire and Attached Affidavit | October 11, 2005 | No |
| Charge | November 28, 2005 | No |
| Amended Charge | January 25, 2006 | No |
| Complaint | January 17, 2007 | No |
| Amended Complaint | February 18, 2007 | No |
| Second Amended Complaint | June 7, 2007 | Yes |
| Affidavit | July 16, 2007 | Yes |
| "Supplemental" Affidavit | March 17, 2008 | Yes |

The City avers that the allegations in the proffered affidavits are not sufficient to overcome the renewed motion to dismiss. The City contends that Neely's "supplemental" affidavit is not credible, constitutes an attempt to create a sham factual issue, and thus should be disregarded. Dkt.

# 59, at 6-7. The City further contends that, even if all of the allegations in Neely's new affidavit and his wife's affidavit were assumed to be true, they still do not state that Neely actually told the EEOC investigator that his employer retaliated against him for investigating co-worker sexual harassment. Id. at 10. According to the City, allegations regarding the investigation of the Broken Arrow Fire Department's general work environment invoke a "wholly separate issue and one which was never filed as a separate charge with the EEOC." Id. Finally, the City contends that, even if Neely told the EEOC investigator that his employer retaliated against him for investigating the alleged sexual harassment, "these new discrete claims were not submitted to the EEOC until well after the 300 day deadline," thus rendering them untimely, id. at 10, 12; and Neely's retaliation claim, as it pertains to the alleged co-worker sexual harassment, constitutes an individual retaliatory act with its own filing deadline, id. at 12-13. In sum, the City concludes that "if the Court allows Plaintiff to clear the credibility hurdle and finds that he properly alleged retaliation for investigating co-worker sexual harassment, the Court must [also] find that the new claim 'relates back' to the original filing [in order for the claim to be timely]." Id. at 15 (emphasis in original).

By contrast, Neely argues that he has submitted sufficient evidence to demonstrate exhaustion of administrative remedies with respect the new allegations of co-worker sexual harassment in the second amended complaint. Dkt. # 50, at 4. Neely argues that his affidavits do not qualify as "shams." Id. at 7. Neely also argues that his subsequent oral submission to the EEOC, as detailed in the proffered affidavits, relates back to his timely amended charge. Id. at 5. Neely claims that his oral submission does not "form[] the basis for a new, separate, and discrete claim of retaliation" and, thus, is not untimely. Dkt. # 60, at 5. In the alternative, Neely argues that the City's motion must be converted to a summary judgment motion because "the substantive

12

elements of plaintiff's claim demonstrate[] that there is a substantial overlap between the two such that defendant's dismissal motion must be converted . . . ." Dkt. # 50, at 10. In sum, Neely contends that "[w]hen there is doubt about the scope of a charge, that doubt should be resolved in favor of the charging party so as to give liberal construction to the charge and protect employee rights." Dkt. # 60, at 9.

## II.

A motion to dismiss pursuant to Rule 12(b)(1) should be granted if a plaintiff cannot establish the court's subject matter jurisdiction. In addressing whether dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is appropriate, a court may consider affidavits and other documents submitted by the parties and resolve disputed jurisdictional facts. Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324-25 (10th Cir. 2002); see Davis ex rel. Davis v. United States, 343 F.3d 1282, 1294 (10th Cir. 2003) ("[I]t is appropriate, particularly in the exhaustion context, for a district court to consider evidence beyond the pleadings in resolving a challenge to subject-matter jurisdiction."); United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 551 n.1 (10th Cir. 1992) ("Factual findings made by the trial court on the question of jurisdiction will not be disturbed unless clearly erroneous."). Further, "[r]eliance on evidence outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under Fed. R. Civ. P. 56." Sizova, 282 F.3d at 1324. Conversion is required only when the jurisdictional question is intertwined with the merits of the case. Id.

Here, the parties have submitted materials outside of the pleadings. As to the standard of review, the Court need not convert this motion to one for summary judgment because the jurisdictional question is not intertwined with the merits of this case. See Dkt. # 40, at 5; see also

Sizova, 282 F.3d at 1324-25 ("[T]he jurisdictional issue is whether [plaintiff] has exhausted h[is] administrative remedies, a matter that is simply not an aspect of h[is] substantive claim of discrimination."). A determination by this Court as to whether Neely told the EEOC investigator about the alleged co-worker sexual harassment in no way resolves a substantive element of plaintiff's retaliation claim. Cf. Sizova, 282 F.3d at 1325 n.2 (noting that the jurisdictional question turns on an aspect of the substantive claim where, for example, the plaintiff's employee status under Title VII is at issue). Regardless of whether the Court considers the City's motion under Rule 12(b)(1) or Rule 56, however, Neely's burden remains essentially the same; he must present "affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003); United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 n.5 (10th Cir. 1999).

### III.

Where a Rule 12(b)(1) motion challenges the facts upon which subject matter jurisdiction rests, a district court "may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist." Koch Indus., 971 F.2d at 551 n.1. The Tenth Circuit has intimated that a district court may weigh the evidence as to any factual dispute surrounding jurisdiction. See id. (noting that a district court may make factual findings); see also Sizova, 282 F.3d at 1324 (holding that a district court may resolve disputed jurisdictional facts under Rule 12(b)(1)). Other circuits have arrived at similar conclusions. The Eleventh Circuit, for example, has held that a Rule 12(b)(1) factual attack uniquely positions the trial court as fact-finder. Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997). "Because at issue in

a factual 12(b)(1) motion is the trial court's jurisdiction – the very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence to satisfy itself as to the existence of its power to hear the case." Id. (internal quotation marks and citation omitted). A dispute as to material facts does not "preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (internal quotation marks and citation omitted). The Third, Fourth, Fifth, and Sixth Circuits concur. See Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 n.4 (3rd Cir. 2002) ("In a factual attack, the court must weigh the evidence relating to jurisdiction . . . ."); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999) ("[T]he court may weigh the evidence in determining whether the facts support the jurisdictional allegations."); Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005) ("In considering a challenge to subject matter jurisdiction, the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" (citation omitted)); Golden v. Gorno Bros., Inc., 410 F.3d 879, 881 (6th Cir. 2005) ("When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving . . . jurisdiction over the subject matter.").

Here, the Court finds that Neely cannot overcome the City's factual attack. Simply put, Neely can not show by a preponderance of the evidence that he actually submitted to the EEOC investigator in written or oral form the details enumerated in his July 16, 2007 affidavit. The EEOC file is devoid of any written submission reporting the co-worker sexual harassment. The EEOC investigator also does not recall any conversation with Neely about co-worker sexual harassment. The EEOC investigator admits that she does not document every telephone call with a charging party. She adds, however, that if she does take notes, she generally places the notes in the charging

file. The EEOC investigator reviewed Neely's charging file but did not locate any notes evidencing her phone conversations with Neely.

The Court finds that Neely's eleventh hour attempt to produce supporting evidence falls far short of meeting his burden. The Court did not order discovery simply to allow Neely to submit additional enhanced affidavits. The purpose of the limited discovery was to allow Neely an opportunity to corroborate his allegations; this he could not do. Moreover, these recent self-serving statements raise serious questions of credibility. Neither Neely nor his wife ever mentioned the supposed telephone conversation with the EEOC investigator until such recollection became strategically necessary. Both Neely and his wife stand to benefit from advancement of this litigation. In sum, these recent affidavits are no more than a repackaging of the facts alleged in Neely's July 16, 2007 affidavit. They essentially add nothing to the record and ostensibly defeat the entire purpose of the limited discovery.

Having carefully considered the record, the Court determines that Neely has failed to meet his burden of establishing this Court's subject matter jurisdiction.[6] Neely cannot show, by a preponderance of the evidence, that he actually submitted to the EEOC investigator in written or oral form the details enumerated in his July 16, 2007 affidavit. Thus, the Court finds that the new factual

---

[6] As discussed in the previous Opinion and Order (Dkt. # 40), "[e]xhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks and citation omitted). To exhaust administrative remedies, a plaintiff must file a timely charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(b). "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). Thus, if the EEOC is not reasonably expected to investigate a plaintiff's claim or the underlying factual allegations contained in the EEOC charge, a court does not have jurisdiction to consider the matter.

allegations contained in the second amended complaint do not fall within the scope of the EEOC charge.[7]

### III.

In conclusion, Neely has failed to meet his burden. The Court does not have subject matter jurisdiction as to the new allegations in the second amended complaint because Neely failed to exhaust his administrative remedies. The Court finds that Neely's retaliation claim must be dismissed because the only remaining aspect of his claim pertains to the alleged sexual harassment of the public, which is insufficient to state a Title VII claim. Neely, 2007 WL 1574762, at *5.

**IT IS THEREFORE ORDERED** that Defendant's Renewed Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support (Dkt. # 49) is hereby **granted**. The Second Amended Complaint is dismissed in its entirety. A separate judgment of dismissal will be entered.

**DATED** this 13th day of June, 2008.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[7] In light of this conclusion, the Court need not consider plaintiff's other arguments regarding the scope of the charge or the relation back doctrine.